No. 25-1395

# United States Court of Appeals
## for the First Circuit

_____

THOMAS R. NARRIGAN,

*Plaintiff-Appellant*,

*v.*

DEBORAH B. GOLDBERG, IN HER OFFICIAL CAPACITY AS TREASURER AND RECEIVER OF THE COMMONWEALTH OF MASSACHUSETTS,

*Defendant-Appellee.*

_____

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

_____

**BRIEF OF DEFENDANT-APPELLEE**

_____

ANDREA JOY CAMPBELL
*Attorney General of Massachusetts*
Arjun Kent Jaikumar, 1st Cir. No. 1182625
*Assistant Attorney General*
Government Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2856
arjun.k.jaikumar@mass.gov

# TABLE

JURISDICTIONAL STATEMENT ...............................................................1

INTRODUCTION ......................................... **Error! Bookmark not defined.**

STATEMENT OF THE ISSUES ...................................................1

I.      BACKGROUND AND FACTUAL ALLEGATIONS.........................2

A.      Statutory and Regulatory Background ....................................2

B.      The Fifth Amendment ........................................................6

C.      Mr. Narrigan's Allegations ..................................................7

D.      The District Court's Opinion...............................................10

ARGUMENT............................................................................13

I.      Standard of Review ............................................................13

II.     The District Court Correctly Dismissed the Complaint......................15

      A.      Mr. Narrigan Lacks Standing ..........................................15

      B.      Narrigan's Claims Are Barred By The Eleventh Amendment.....................................................................21

            1.      Mr. Narrigan Seeks Retroactive Monetary Relief..........22

            2.      Federal Equitable Relief is Not Available in Takings Cases Where a State Law Remedy Exists ................................................................25

            3.      Mr. Narrigan's Arguments To The Contrary Are Unavailing ..........................................................28

      C.      Mr. Narrigan Fails To State A Takings Claim ...............31

CONCLUSION.........................................................................34

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS ...................................................................................................... 35

CERTIFICATE OF SERVICE ..................................................................... 35

ADDENDUM ............................................................................................ 36

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*74 Pinehurst LLC v. New York*, 59 F.4th 557 (2d Cir. 2023) ........................... 25, 29

*Am. C.L. Union of Massachusetts v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44 (1st

    Cir. 2013) ........................................................................................................20

*Arnett v. Strayhorn*, 515 F.Supp.2d 690 (W.D. Tex. 2006)....................................25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................... 14-15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)............................................... 14-15

*Biden v. Nebraska*, 600 U.S. 447 (2023) ........................................................... 15, 16

*Biogen IDEC MA, Inc., v. Treasurer & Receiver General*, 908 N.E.2d 740 (Mass.

    2009) ................................................................................................................2

*Brait Builders Corp. v. Massachusetts Div. of Capital Asset Mgmt.*, 644 F.3d 5 (1st

    Cir. 2011) ................................................................................................... 21-22

*Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021) ...........................................16

*Cerajeski v. Zoeller*, 735 F.3d 577 (7th Cir. 2013)...................................................34

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ........................................... 14, 17

*Clark v. Strayhorn*, 184 S.W.3d 906 (Tex. App. 2006)..........................................33

*Cotto v. Campbell*, 126 F.4th 761 (1st Cir. 2025) ............................... 18, 20, 25, 28

*Cwik v. Giannoulias*, 930 N.E.2d 990 (Ill. 2010) ...................................................33

*Dani v. Miller*, 374 P.3d 779 (Okla. 2016) ........................................................ 33, 34

*DeVillier v. Texas*, 601 U.S. 285 (2024) ...................................................... 19, 25-26

*Edelman v. Jordan*, 415 U.S. 651 (1974) ...................................... 13, 23, 28, 30-31

*EEE Minerals, LLC v. North Dakota*, 81 F.4th 809 (8th Cir. 2023) .......... 18, 24, 27

*Esso Standard Oil Co. v. Lopez-Freytes*, 522 F.3d 136 (1st Cir. 2008) .................18

*Ex parte Young*, 209 U.S. 123 (1908) ............................................................. passim

*Goldberg v. Kelly*, 397 U.S. 254 (1970) .................................................................30

*Hawkins v. Barney's Lessee*, 30 U.S. 457 (1831) ...................................................32

*Hogar Agua y Vida en el Desierto, Inc. v. Suarez-Medina*, 36 F.3d 177 (1st Cir.

1994) ............................................................................................................. 13-14

*James v. Hegar*, 86 F.4th 1076 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 1461

(2024) ....................................................................................................................17

*Jinks v. Richland County*, 538 U.S. 456 (2003) .....................................................28

*Liberty Square Dev. Tr. v. City of Worcester*, 441 Mass. 605 (2004) ................6, 18

*Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180 (2019) .................... passim

*Maine Educ. Ass'n Benefits Tr. v. Cioppa*, 695 F.3d 145 (1st Cir. 2012) ..............20

*Maron v. Chief Fin. Officer of Fla.*, 136 F.4th 1322 (11th Cir. 2025) ...................20

*Massachusetts v. Mellon*, 262 U.S. 447 (1923) .....................................................14

*Matter of Olchowski*, 153 N.E.3d 376 (Mass. 2020) ...............................................2

*Merritts v. Richards*, 62 F.4th 764 (3d Cir. 2023) .................................................25

v

*Mills v. Maine*, 118 F.3d 37 (1st Cir. 1997)...............................................................24

*O'Connor v. Eubanks*, 83 F.4th 1018 (6th Cir. 2023) (per curiam) .......................24

*O'Neill v. Baker*, 210 F.3d 41 (1st Cir. 2000) ..........................................................21

*Papasan v. Allain*, 478 U.S. 265 (1986) ..................................................... 23, 24, 28

*Pavlock v. Holcomb*, 35 F.4th 581 ............................................................................28

*Rosie D. ex rel, John D. v. Swift*, 310 F.3d 230 (1st Cir. 2002) .............................22

*Smolow v. Hafer*, 959 A.2d 298 (Penn. 2008) ..........................................................33

*Texaco, Inc. v. Short*, 454 U.S. 516 (1982)................................................. 12, 13, 32

*Talleywhacker, Inc. v. Cooper*, 465 F.Supp.3d 523 (E.D.N.C. June 8, 2020) .. 26-27

*Town of Barnstable v. O'Connor*, 786 F.3d 130 (1st Cir. 2015)...................... 22, 24

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ..................................................15

*Treasurer & Receiver Gen. v. John Hancock Mut. Life Ins. Co.*, 388 Mass. 410

    (1983) .....................................................................................................................3

*Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631 (2023) .............................. 12, 32

*United States v. Locke*, 471 U.S. 84 (1985)...............................................................32

*Univ. of Utah v. Max-Planck-Gesellschaft zur Forderung der Wissenschaften E.V.*,

    881 F. Supp. 2d 151 (D. Mass. 2012)..................................................................23

*Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658 (2019) ...............................15

*Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464 (1st Cir. 2009).................22

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635 (2002)

.................................................................................................... ….16, 23

*Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 378 (1st Cir. 2023)........17

*Willowbrook Apartment Assocs., LLC v. Mayor & City Council of Baltimore*, 2020

WL 3639991 (D. Md. July 6, 2020) ....................................................................27

*Xponential Fitness v. Arizona*, 2020 WL 3971908 (D. Ariz. July 14, 2020)..........27

**<u>Statutes and Constitutional Provisions</u>**

28 U.S.C. § 1291 ...........................................................................................................1

28 U.S.C. § 1331 ...........................................................................................................1

Mass. Gen. Laws c. 200A, § 1 .................................................................................2, 3

Mass. Gen. Laws c. 200A, § 10 ...............................................................................4, 5

Mass. Gen. Laws c. 200A, § 7 ....................................................................................3

Mass. Gen. Laws c. 200A, § 8A .................................................................................4

Mass. Gen. Laws c. 79, § 10 ......................................................................................6

Mass. Gen. Laws. c. 200A, § 9 ...................................................................................4

Massachusetts Const. part 1, art. X................................................................... 1, 6, 9

U.S. Const., amend. 5........................................................................................ passim

## <u>JURISDICTIONAL STATEMENT</u>

Plaintiff-Appellant Thomas R. Narrigan asserted federal jurisdiction before the district court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a). The district court dismissed Mr. Narrigan's claims for three independent reasons: (1) Mr. Narrigan lacks Article III standing to pursue declaratory and injunctive relief; (2) Eleventh Amendment sovereign immunity bars Mr. Narrigan's claims; and (3) Mr. Narrigan failed to state a plausible Takings clause claim. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES</u>

1. Whether Mr. Narrigan lacks standing to pursue declaratory and injunctive relief where he has not plausibly alleged any future injury or any ongoing harm from any past taking?

2. Whether Eleventh Amendment sovereign immunity bars Mr. Narrigan claims where he fails to allege any ongoing injury or any harm that could not be addressed by compensatory remedies and his claims do not fall within the *Ex parte Young* exception?

3. Whether an unconstitutional "taking" has occurred under the Fifth Amendment, where property has been abandoned and the Commonwealth of Massachusetts assumes custody of the property until it is reclaimed?

1

# STATEMENT OF THE CASE

## I.     BACKGROUND AND FACTUAL ALLEGATIONS

### A.     Statutory and Regulatory Background

The Commonwealth's Unclaimed Property Act (the "Act") was first enacted in 1950. It "sets forth a comprehensive scheme governing the disposition of abandoned property." *Matter of Olchowski*, 153 N.E.3d 376, 384 (Mass. 2020) (quoting *Biogen IDEC MA, Inc., v. Treasurer & Receiver General*, 908 N.E.2d 740, 743 (Mass. 2009)); *see also* St. 1950, c. 801. "The legislative purposes of the law are threefold: protecting true owners' rights, bringing additional revenues to the treasury, and providing a procedure for the transfer of abandoned property.'" *Id.* (quoting *Biogen*, 908 N.E.2d at 743).

"Abandoned property" is "property unclaimed and abandoned pursuant to this chapter." Mass. Gen. Laws c. 200A, § 1. "Property" means:

> all intangible property, including: (i) money, money orders, checks, drafts, deposits, interest, dividends, income and bonds; (ii) credit balances, customer overpayments, security deposits, refunds, credit memos, unpaid wages, unused airline tickets, mineral proceeds and unidentified remittances; (iii) stocks and other intangible ownership interests in business associations; (iv) money deposited to redeem stocks, bonds, coupons and other securities, or to make distributions; (v) amounts due and payable under the terms of an annuity or insurance policy; (vi) amounts distributed from a trust or custodial fund established under a plan to provide any health, pension, vacation, severance, retirement, death, stock purchase, profit sharing, employees savings, supplemental unemployment insurance, or similar benefit; and all tangible property, which includes all other property not defined herein as intangible.

2

*Id.*[1]  The conditions for property to be considered abandoned are described in §§ 1A – 6B of the Act.  *See* Mass. Gen. Laws. c. 200A, §§ 1A-6E.  In short, intangible property is presumed abandoned if both the person in possession of it has no record of the apparent owner, and it has been unclaimed for a "dormancy" period of three years.  *See id.*

Holders of property presumed abandoned must report that property to the Treasurer and Receiver-General of the Commonwealth (the "Treasurer"), under oath, and on a standardized form.  *See* Mass. Gen. Laws c. 200A, § 1 (defining the word "Treasurer" as the treasurer and receiver-general of the Commonwealth); Mass. Gen. Laws c. 200A, § 7 (describing requirements for report).  A holder who files a report of unclaimed property shall "pay or deliver to the treasurer at the time of filing the report all property presumed abandoned specified in the report."  Mass. Gen. Laws c. 200A, § 8A.

Property delivered to the Treasurer under the Act "shall vest in the Commonwealth," subject to claims brought under § 10 of the Act.  *See* Mass. Gen.

---

[1]  A Governor's message to the Legislature in 1950 urged passage of an unclaimed property law on the following grounds:  "[w]e need to adopt a law which will cover the disposition of all kinds of abandoned and unclaimed property; will protect true owners' rights when and if they appear to substantiate their claims; and provide a smooth and simple procedure for transferring such property into the state treasury and out of the hands of those in unjust possession."  *Treasurer & Receiver Gen. v. John Hancock Mut. Life Ins. Co.*, 388 Mass. 410, 423 (1983).

Laws. c. 200A, §§ 9(a) and 10.  Generally, the Treasurer is instructed to "proceed with the liquidation of property" surrendered to her "not earlier than one year after delivery of the property."  G.L. c. 200A, § 9(b).  All monies received by the Treasurer shall "be placed in a special fund to be known as the Unclaimed Property Fund."  Mass. Gen. Laws c. 200A, § 9(e).  "Whenever such fund exceeds five hundred thousand dollars, the excess shall be credited to the General Fund."  *Id.* Payments to owners who claim their property after it has been surrendered to the State by the prior holder "shall be made from said Unclaimed Property Fund."[2]  *Id.*

A claim to property surrendered to the Treasurer may be established at any time.  Mass. Gen. Laws c. 200A, § 10(a).  If the property has not been liquidated by the time the claim is filed, the Treasurer shall "delay liquidation proceedings that may be in process until such time as the rights of the claimant have been finally determined."  *Id.*  The validity of the claim shall be determined by the Treasurer, as follows:

> The state treasurer shall possess full and complete authority to determine all such claims and shall, forthwith, send a written notice of such determination to the claimant. At any time within twenty days thereafter such claimant may apply for a hearing and redetermination of his claim. After an appropriate hearing before the state treasurer, or

---

[2]    Further, since fiscal year 2013, whenever the annual abandoned property net revenue increases compared to the prior year, 75% of the increase must be transferred to the Commonwealth Stabilization Fund.  *See* Mass. Gen. Laws. c. 29, § 5H.

person duly designated by him, the state treasurer shall make a final determination.

Mass. Gen. Laws c. 200A, § 10(b).  A claimant who is "adversely affected by" a decision of the Treasurer may appeal to the District Court, Boston Municipal Court, or the Superior Court in the county where they reside.  *Id.* at § 10(d).  From there, an "adversely affected" claimant may appeal to the Supreme Judicial Court.  *Id.*

If a claim is determined in the claimant's favor:

the treasurer shall pay over to the claimant only that amount which the treasurer actually received together with interest at the rate of one-twelfth of one per cent per month from the time when it was received by the treasurer to the time when it was paid by him to the claimant; provided, however, that if the property claimed was interest bearing to the owner on the date of surrender by the holder then the treasurer shall instead add interest at a rate not to exceed five-twelfths of one per cent per month or such lesser rate as the property earned while in the possession of the holder. Such interest on interest bearing property shall begin to accumulate on the date property is delivered to the state treasurer and shall cease on the earlier of the expiration of fourteen years following delivery or the date on which payment is made to the owner.

Mass. Gen. Laws c. 200A, § 10(e).  The interest rates described in the Act amount to 1% per year for property that was not interest-bearing at the time it was surrendered to the Treasurer and up to 5% per year for property that was interest-bearing at the time it was surrendered to the Treasurer.  When a true owner makes a valid claim for property previously deemed abandoned, payment of the statutory interest (along with the principal) is made out of the Unclaimed Property Fund.  G.L. c. 200A, § 10(e).

### B.    The Fifth Amendment

As relevant here, the Fifth Amendment to the U.S. Constitution, and Article X of the Massachusetts Declaration of Rights, provide that private property may not be taken for public use without "just" or "reasonable" compensation, respectively. U.S. Const., amend. 5; Massachusetts Const. part 1, art. X.[3]

Massachusetts courts can, and do, allow takings claims seeking just compensation, for both real and personal property.  "[W]hen the personal property of any person has been damaged, seized, destroyed or used for a public purpose," and the owner has "suffered an injury for which he is entitled to compensation, the damages therefor may be recovered under this chapter."  Mass. Gen. Laws c. 79, § 10.  Indeed, Massachusetts courts have previously considered the precise question at the heart of Mr. Narrigan's complaint: whether a statutorily established interest rate is sufficient to constitute "just compensation" for an alleged taking.  *See Liberty Square Dev. Tr. v. City of Worcester*, 441 Mass. 605, 612 (2004) ("[T]he Legislature may address the issue of the interest to be paid on damage awards in land taking cases, and any interest rate set by statute enjoys a rebuttable presumption that it is a reasonable rate that would satisfy constitutional requirements.").

---

[3]    Article X states that "whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor."

6

### C.    Mr. Narrigan's Allegations

The heart of Mr. Narrigan's Complaint is that the Act is unconstitutional under the Fifth and Fourteenth Amendments to the United States Constitution because it does not provide adequate compensation for the "time value" of unclaimed property in the possession of the Commonwealth when and if such property is claimed by the rightful owner. *See* RA10-18(¶¶ 1, 3, 6-7, 32).  The Complaint asserts that Mr. Narrigan is a Massachusetts citizen; that the Commonwealth is holding $3 billion in unclaimed property in the Unclaimed Property Fund and has returned more than $787 million from that fund to claimants in the last five years; and that the Commonwealth presently holds property categorized as "miscellaneous intangible property" and "refunds" in the amount of less than $100 that rightfully belongs to Mr. Narrigan.  RA11-15(¶¶ 10, 19, 23).

The Complaint includes relatively few other factual allegations.  For example, while Mr. Narrigan alleges that the Commonwealth "converted [his] non-cash unclaimed property into cash and has used the cash to fund the Commonwealth's operations and programs," RA15-16(¶ 24), the Complaint acknowledges that funds from the Commonwealth's collection of unclaimed property are only credited to the General Fund or the Stabilization Fund (*see* n.2, *supra*) when the amount held in the Unclaimed Property Fund exceeds $500,000.  RA13(¶ 16).  The Complaint alleges

no basis for the claim that Nr. Narrigan's unclaimed property, in particular, has been used to fund the Commonwealth's operations and programs.  RA 15-16(¶ 24).

Similarly, while Mr. Narrigan acknowledges that the Commonwealth will pay him statutory interest on the property if and when he claims ownership thereof, he asserts "that interest is not based on or related to the benefits to the Commonwealth from the use of the property and is not just compensation for the Commonwealth's use of that property during the period of custody."  RA15-16(¶ 25).  Mr. Narrigan cites no basis for this allegation, which is wholly speculative.

The absence of certain other factual allegations is notable.  Mr. Narrigan does not allege that he has ever submitted a claim to the Commonwealth for the subject property, nor that he made any demand for compensation for its "time value." Similarly, although the Complaint seeks declaratory and injunctive relief to secure against prospective injury, Mr. Narrigan does not allege that he expects to abandon property in the future, that he intends to reclaim his property, or that any of his property will be subjected to any *future* taking.

Mr. Narrigan also fails to allege any facts whatsoever relating to: (i) whether, or how, Mr. Narrigan may have verified that the property in question belongs to him; (ii) whether he was aware of any unclaimed property held in his name before checking the State's database; (iii) who held his unclaimed property before it was surrendered to the Commonwealth; (iv) when the property was surrendered to the

Commonwealth; (v) whether the property was interest-bearing before its surrender and at what rate; (vi) the amount that he believes would be sufficient to provide him "just compensation" if he were to claim the funds; or even (vii) the specific nature of the property at the time it was surrendered.

Count I of Mr. Narrigan's Complaint seeks "Declaratory and Prospective Injunctive Relief Awarding Just Compensation on Behalf of the Plaintiffs and the Class for Violation of the Fifth Amendment to the U.S. Constitution." *See* RA18(¶¶ 33-37). Count II of asserts the same theory under Article 10 of the Massachusetts Constitution. RA19(¶¶ 38-42). On appeal, Mr. Narrigan appears to pursue his Fifth Amendment claim only. Br. 1.

Narrigan seeks: (A) a declaration that "the Commonwealth's use of the unclaimed property surrendered to the Commonwealth for public purposes is a taking of property within the meaning of the Fifth Amendment and Article X, for which the Commonwealth is required to pay just compensation"; (B) a declaration that the Commonwealth "must pay just compensation to Plaintiff and the Class and setting the measure of just compensation"; (C) an injunction "to ensure that the Commonwealth complies with that [court's declaration] when returning property to owners of unclaimed property"; (D) an award of attorneys' fees and expenses; and (D) such other and further relief as the Court deems just and proper. RA20.

**D.    The District Court's Opinion**

In April 2024, the Treasurer moved to dismiss Mr. Narrigan's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  As relevant to this appeal, the Treasurer argued that Mr. Narrigan's claims, which functionally sought retroactive monetary relief, were barred by the Eleventh Amendment's grant of sovereign immunity; that Mr. Narrigan lacked standing to seek declaratory and injunctive relief as he had alleged no prospective injury; and that Mr. Narrigan had failed to state a claim in any event.  In his opposition, Mr. Narrigan asserted that his injury is "ongoing," as the Commonwealth continues to hold, and allegedly use, his unclaimed property, and that he therefore has standing to seek equitable relief pursuant to the doctrine of *Ex parte Young*.

The district court granted the Treasurer's motion and dismissed the Complaint on three alternative grounds.  RA34-45.  *First*, the district court held that Mr. Narrigan had alleged, at most, a past harm suitable for retroactive relief, and therefore lacked standing to pursue declaratory and injunctive relief.  *Id*. at 34-37. *Second*, and relatedly, the district court rejected Mr. Narrigan's assertion that his injury was "ongoing," and held that because he failed to allege such an ongoing injury, he did not invoke the exception to Eleventh Amendment immunity established by *Ex parte Young,* nor did he identify any abrogation of sovereign immunity allowing his claims to proceed.  *Id*. at 37-43.  *Finally*, the district court

10

held that Mr. Narrigan failed to state a plausible Takings claim: as Mr. Narrigan's property was abandoned, and escheated to the Commonwealth as a consequence of his own neglect, there was no "taking" under the Fifth Amendment. *Id*. at 43-45. As the district court explained, "the Commonwealth provides a mechanism for [Mr. Narrigan] to reclaim his property in full. It further provides for the recovery of interest earned by the property, even when the abandoned property may not have earned interest beforehand. This is all, and perhaps more, than the Constitution requires." *Id*. at 45. This appeal followed.

## SUMMARY OF THE ARGUMENT

Mr. Narrigan pleads that he is the owner of certain unclaimed property in the custody of the Defendant-Appellee Deborah Goldberg, in her official capacity as Treasurer and Receiver General of the Commonwealth. Under the Commonwealth's Unclaimed Property Act (the "Act"), the property is described as "miscellaneous intangible property" and "refunds." RA15(¶23).[4] Mr. Narrigan brought two claims against Ms. Goldberg, asserting a "taking" under the Fifth Amendment to the United States Constitution and under Article X of the Massachusetts Constitution. RA18-20(¶¶33-42). He invites this Court to conclude that when the Commonwealth takes

---

[4] Citations to "RA" herein shall be to the corresponding pages of the record appendix filed with this Court on July 15, 2025. Citations to "Add." shall be to the corresponding pages of the Treasurer's Addendum included herein. Citations to "Br." shall be to the corresponding pages of Mr. Narrigan's opening brief.

possession of property abandoned through the owner's own neglect, and holds it in trust for the owner until it is claimed, that a Fifth Amendment "taking" has occurred. This Court should reject that invitation.

As the district court rightly concluded, Mr. Narrigan's property "was not taken" but "was abandoned through his own neglect." Add. 17. There is a "long tradition of States taking title to abandoned property," *Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631, 646 (2023), and in such cases, the Supreme Court has "never required the State to compensate [an] owner for the consequences of his own neglect," *Texaco, Inc. v. Short*, 454 U.S. 516, 530 (1982).

Mr. Narrigan further asks this Court to declare, assuming *arguendo* that a taking *did* occur (it did not), that the Act is unconstitutional because it prevents the Treasurer from paying "just compensation" for an alleged "taking." But this Court need not reach this constitutional question under Mr. Narrigan's ill pleaded facts. *First*, as the district court correctly held, Add. 6-9, Mr. Narrigan lacks standing to seek prospective relief—in the form of a declaratory judgment and an injunction—against the State where he identifies no future or ongoing injury and his claim relates only to compensatory relief for a past harm, akin to money damages. *Second*, also as the district court correctly held, Add. 9-15, the Eleventh Amendment's grant of sovereign immunity bars damages suits against a State.

12

This Court should reject Mr. Narrigan's attempt to recast his claim for "just compensation"—to be paid more than he thinks the Commonwealth will pay him when he ultimately reclaims his property—as a request for declaratory and injunctive relief.  He attempts to squeeze this request within the "narrow exception" to Eleventh Amendment immunity articulated in *Ex parte Young*, 209 U.S. 123 (1908).  But that attempted end run around the Eleventh Amendment is not permissible: as the Supreme Court has long observed, a grant of declaratory or injunctive relief that requires a State to make a specific payment out of its treasury, which Mr. Narrigan seeks here, is no different in substance than the damages awards the Eleventh Amendment bars.  *Edelman v. Jordan*, 415 U.S. 651, 667-68 (1974).

Finally, even if Mr. Narrigan's claims were not barred by sovereign immunity, and even if he had standing to pursue them, he has failed to state a claim.  Where, as here, a State takes possession of abandoned property and holds it until it is reclaimed, no "taking" has occurred as a matter of law.  *Texaco,* 454 U.S. at 530.

For each of these reasons, this Court should affirm the judgment of the district court.

## **ARGUMENT**

### I.    **Standard of Review**

Federal Rule of Civil Procedure 12(b)(1):  Where, as here, the jurisdictional facts are not disputed, this Court reviews a district court's dismissal for lack of

subject-matter jurisdiction *de novo*. *Hogar Agua y Vida en el Desierto, Inc. v. Suarez-Medina*, 36 F.3d 177, 181 (1st Cir. 1994). The burden to establish Article III standing lies with the party asserting jurisdiction: a plaintiff "must show that he has sustained or is immediately in danger of sustaining some direct injury . . . and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983). "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). A party asserting unconstitutional state action "must be able to show, not only that the [action] is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement." *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923).

 Federal Rule of Civil Procedure 12(b)(6): To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating this motion to dismiss, the Court generally assumes the truth of "all well-plead[ed] facts" but need not do so for legal conclusions; a plaintiff need not provide "detailed factual allegations" but must allege more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."

14

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-86 (2009). "Naked assertion[s]" devoid of "further factual enhancement" will not suffice. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). This court reviews the district court's legal conclusions *de novo*. *United Paperworkers Int'l Union Loc. 14, AFL-CIO-CLC v. Int'l Paper Co.*, 64 F.3d 28, 32 (1st Cir. 1995).

## II.    The District Court Correctly Dismissed the Complaint

### A.    Mr. Narrigan Lacks Standing

"Under Article III of the Constitution, a plaintiff needs a 'personal stake' in the case" to bring a lawsuit. *Biden v. Nebraska*, 600 U.S. 447, 489 (2023) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)); *see also* U.S. Const., art. III, § 2, cl.1. "That is, the plaintiff must have suffered an injury in fact—a concrete and imminent harm to a legally protected interest, like property or money—that is fairly traceable to the challenged conduct and likely to be redressed by the lawsuit." *Biden*, 600 U.S. at 489. Further, "[a]s a jurisdictional requirement, standing to litigate cannot be waived or forfeited." *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662-63 (2019).

In this action, Mr. Narrigan seeks prospective—injunctive and declaratory—relief. RA18-19(¶¶ 33-42). However, Mr. Narrigan alleges only a past harm, one that accrued when "the Treasurer took his property into custody and, as required by the Act, put the property to public use without paying just compensation." RA35.

15

He does not allege that his property will be subjected to a *future* taking (*i.e.*, that he will once again abandon property in the future that will ultimately escheat to the Commonwealth, which will in turn hold it in trust, with statutory interest accruing, until Mr. Narrigan chooses to reclaim it).[5]  Instead, Mr. Narrigan asserts that the Commonwealth has taken, and continues to hold, his property for public use, and that when he seeks to claim it, he will receive an amount of interest he believes to be inadequate.  RA16-18(¶¶ 25, 32).  And he asks for a declaration and injunction "setting the measure of just compensation," RA20; that is, Mr. Narrigan seeks an order that he is entitled to a specific amount of compensation if and when he seeks to claim his property.

Accordingly, the district court correctly observed that although Mr. Narrigan's alleged "harm would support standing for retrospective monetary relief," he did not "bolster this allegation of past harm by indicating he intends to abandon property in the future, intends to claim his property from the government, or is

---

[5]    In this respect, Mr. Narrigan's claims differ from those at issue in several inapposite cases upon which he relies.  In those cases, plaintiffs sought to preclude *future* or impending enforcement.  *See, e.g.*, *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 145 (2021) (plaintiffs sought injunction against enforcement of access regulation granted to labor union based on "[belief] that the union would likely attempt to enter their property again in the near future."); *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (plaintiff sought injunction "that state officials be restrained from enforcing an order in contravention of controlling federal law").

otherwise likely to suffer a similar taking in the future." RA35-36. The district court thus held that Mr. Narrigan lacked standing to pursue declaratory or injunctive relief. *See Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 378 (1st Cir. 2023) ("Standing for injunctive relief depends on 'whether [the plaintiff is] likely to suffer future injury.'"); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (where plaintiff alleges past injury but no future harm, "for that injury, he has an adequate remedy at law."); *James v. Hegar*, 86 F.4th 1076, 1082 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 1461 (2024) ("Plaintiffs here have only alleged that they were injured by past takings; they allege no facts indicating that another taking of their property is imminent or certainly impending.").

On appeal, Mr. Narrigan primarily contends that his injury is not retrospective, but "ongoing," because he has yet to reclaim his unclaimed property, and the Commonwealth still holds it (and, he alleges, "uses" it for public purposes) without compensating him. But Mr. Narrigan does not explain *why* his injury is supposedly ongoing, other than that the property continues to rest within the Commonwealth's accounts, and that argument is foreclosed by well-established precedent.[6] As this Court has recently made clear, "state officials' continued

---

[6] Indeed, if Mr. Narrigan's position were correct, it would provide a perverse and illogical incentive for claimants *not* to reclaim their abandoned property promptly, but instead to pursue litigation, since a plaintiff could *control* the extent to which an injury is "ongoing."

withholding of past benefits, even if wrongful, amounted to a past wrong and not an ongoing violation." *Cotto v. Campbell*, 126 F.4th 761, 769–70 (1st Cir. 2025). There, as here, even if "continued withholding of plaintiffs' forfeited property did violate federal law, it would be a past violation, not an ongoing one." *Id*. at 770.

Moreover, as this Court has long held, a bedrock principle underlying equitable relief is that a plaintiff must demonstrate "that remedies available at law, such as monetary damages, are inadequate to compensate for [the plaintiff's] injury." *Esso Standard Oil Co. v. Lopez-Freytes*, 522 F.3d 136, 148 (1st Cir. 2008). Mr. Narrigan has not, and cannot, so demonstrate here. The gravamen of Mr. Narrigan's complaint is that he does not believe he will receive "just compensation" for the Commonwealth's alleged use of his abandoned property when he decides to claim it; in short he believes he will receive less money than he believes he should. That is a quintessential damages claim, not a claim for equitable relief. Nothing in Mr. Narrigan's complaint or briefing explains why a monetary award from a state court in an action seeking just compensation would be inadequate to compensate fully for an alleged injury that is entirely monetary in nature.[7]

---

[7]    The Commonwealth's courts are well equipped to address just compensation claims brought against the Commonwealth, including those disputing the appropriate measure of compensation and the interest rate appropriate for that measurement. *See* G.L. c. 79, § 10; *Liberty Square*, 441 Mass. at 612. As the Supreme Court has made clear, if a just compensation claim is available in state courts under state law, federal courts need not grapple with the question whether any

(footnote continued)

Mr. Narrigan relies on *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180, 189 (2019) for the proposition that he has standing to pursue declaratory or injunctive relief, although Mr. Narrigan acknowledges that *Knick* "did not directly address standing." Br. at 12. In fact, *Knick* confirms the opposite: "equitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law" where, as here, "a suit for compensation can be brought against the sovereign subsequent to the taking." 588 U.S. at 195 (2019) (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984).

Nothing in *Knick* supports the proposition for which Mr. Narrigan cites it: that a taking is an ongoing harm that "continues while the property is used for public purposes until compensation is paid" and for which equitable relief is appropriate. Br. at 12. Rather, *Knick* concluded that "[g]overnments need not fear that our holding will lead federal courts to invalidate their regulations as

---

direct cause of action exists under the Fifth and Fourteenth Amendments. *See DeVillier v. Texas*, 601 U.S. 285, 291-93 (2024). To the extent Mr. Narrigan can plead a plausible takings claim (he has yet to do so), that claim belongs in state court, not in a federal forum. *See EEE Minerals, LLC v. State of North Dakota*, 81 F.4th 809, 816 (8th Cir. 2023) ("There is no dispute that [plaintiff] may bring her takings claim in . . . state court. . . . But the Eleventh Amendment bars a claim against the State in federal court as long as state courts remain open to entertain the action.")

unconstitutional.  As long as just compensation remedies are available—as they have been for nearly 150 years—injunctive relief will be foreclosed."  588 U.S. at 205.[8]

If Mr. Narrigan were correct that any taking constituted an "ongoing" injury until just compensation (in the specific measure sought by the plaintiff) were paid, *every* such claim would be suitable for injunctive relief.  That is not, and has never been, the law.  See *Maine Educ. Ass'n Benefits Tr. v. Cioppa*, 695 F.3d 145, 152 & n.3 (1st Cir. 2012) ("ordinarily, injunctive relief is not available under the Takings Clause.").  So, too, for declaratory relief.  "With limited exceptions, not present here, issuance of a declaratory judgment deeming past conduct illegal is also not permissible as it would be merely advisory."  *Am. C.L. Union of Massachusetts v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 53 (1st Cir. 2013).[9]

---

[8]    For similar reasons, *Maron v. Chief Fin. Officer of Fla.*, 136 F.4th 1322 (11th Cir. 2025), is not persuasive.  Although the Eleventh Circuit asserted that *Maron* was "on all fours" with the Supreme Court's holding in *Knick*, *see id.* at 1330-31, *Maron* ignored *Knick*'s repeated cautions regarding the unavailability of injunctive relief and held, without explanation, that plaintiffs (who "alleged that a taking already occurred," *id.* at 1331) had an ongoing rather than completed injury.  *Id.* at 1333-34.  Because *Maron's* reasoning is flawed and inconsistent with Supreme Court precedent in *Knick*, as well as this Court's precedent, *e.g.*, *Cotto*, 126 F. 4th at 768-70, this Court should not follow it.

[9]    Mr. Narrigan further contends that the district court somehow erred by focusing on the fact that his unclaimed property remains in the Commonwealth's accounts, rather than the "use" to which the Commonwealth allegedly puts it.  Mr. Narrigan does not explain this point further, but it is irrelevant.  Mr. Narrigan's alleged injury arises from the *taking* of his unclaimed property for public use without "just compensation"; the Commonwealth's ongoing use of that property causes Mr. Narrigan no independent injury.  U.S. Const., amend. 5.

In sum, Mr. Narrigan alleges, at most, an injury arising out of a *past* and completed act—the taking of his property—in the form of allegedly inadequate expected compensation. Because he alleges no ongoing or prospective injury, he lacks standing to seek prospective relief against the Treasurer.

### B.    Narrigan's Claims Are Barred By The Eleventh Amendment

Mr. Narrigan's claims were properly dismissed for a second, independent reason as well. As the district court held, Mr. Narrigan's claims amount to a claim for compensation from a state official and are barred from litigation in federal court by the Eleventh Amendment to the U.S. Constitution. RA37-42.

The Eleventh Amendment bars federal claims brought by citizens against state entities, "regardless of the nature of the relief sought." *O'Neill v. Baker*, 210 F.3d 41, 47 (1st Cir. 2000) (citation omitted); *accord Brait Builders Corp. v. Massachusetts Div. of Capital Asset Mgmt.*, 644 F.3d 5, 11 (1st Cir. 2011). The Commonwealth has not waived its Eleventh Amendment immunity in this case— neither explicitly, nor by merely "defend[ing] itself upon being haled into federal court as a defendant against its will." *Davidson v. Howe*, 749 F.3d 21, 28 (1st Cir. 2014) (citation and internal quotation marks omitted). Moreover, the Commonwealth's immunity has not been abrogated by Congress, nor by Section 1983, under which Mr. Narrigan sues. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63-67 (1989); *Brait Builders*, 644 F.3d at 11 (where neither waiver nor

abrogation had occurred, it is "perfectly clear" that claims against state agencies are barred by the Eleventh Amendment).

Mr. Narrigan seeks to invoke the "narrow" exception to Eleventh Amendment immunity under *Ex parte Young*, where *prospective* relief is sought in federal court against an individual state official to enjoin a continuing violation of the Constitution or federal law. Pursuant to the *Ex parte Young* doctrine, a plaintiff may sue a state official in their official capacity to "compel them to comply with federal law," but "[s]uch suits . . . may only seek prospective injunctive or declaratory relief; they may not seek retroactive monetary damages or equitable restitution." *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 478 (1st Cir. 2009). As set forth above, and as the district court correctly held, Mr. Narrigan's attempt to recast a retroactive claim for monetary relief for a past taking as an "ongoing" harm suitable for equitable relief fails.

### 1.    Mr. Narrigan Seeks Retroactive Monetary Relief

Under *Ex parte Young*, the "right to ask for prospective injunctive relief against state officials in a federal forum" is well established. *Rosie D. ex rel, John D. v. Swift*, 310 F.3d 230 (1st Cir. 2002); *see also Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015). "Whether a request for relief is prospective requires a 'straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"

22

*Univ. of Utah v. Max-Planck-Gesellschaft zur Forderung der Wissenschaften E.V.*, 881 F. Supp. 2d 151, 154 (D. Mass. 2012), *aff'd*, 734 F.3d 1315 (Fed. Cir. 2013) (quoting *Verizon Md., Inc. v. PSC*, 535 U.S. 635, 645 (2002)). "A federal court can order prospective relief that has an impact on the state treasury, provided that the impact on the state treasury is only an *ancillary* result of requiring that the state official conform his or her conduct to the dictates of federal law." *Id.* (emphasis added) (citing *Edelman v. Jordan*, 415 U.S. 651, 667 (1974)).

As the Supreme Court has cautioned, however, *Ex parte Young* does *not* hold "that any form of relief may be awarded against a state officer, no matter how closely it may in practice resemble a money judgment payable out of the state treasury, so long as the relief may be labeled 'equitable' in nature." *Edelman*, 415 U.S. at 666. Further, in determining whether a plaintiff's claim is, in fact, for "prospective injunctive relief," courts should look to the "substance rather than form" of the relief sought. *Papasan v. Allain*, 478 U.S. 265, 279 (1986).

As in *Edelman*, the relief Mr. Narrigan seeks here would require "payment of state funds . . . as a form of compensation" for use of property that has been surrendered to the Commonwealth under the Act. 415 U.S. at 668. A declaration or an injunction requiring the Commonwealth to compensate owners of unclaimed property for the "time value" of their property from the date of surrender to the date they assert ownership (whenever they should choose to do so) would be "in practical

23

effect indistinguishable in many aspects from an award of damages against the State." *Id.* Such an order is unavailable under *Ex parte Young* because it plainly would infringe upon the Commonwealth's sovereign immunity.[10]   *See Town of Barnstable*, 786 F.3d 130, 138 ("The Constitution does not permit relief that 'would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment.'") (quoting *Mills v. Maine*, 118 F.3d 37, 55 (1st Cir. 1997)).

In short, because a "raid on the state treasury [would] result" from the relief Narrigan seeks, *Town of Barnstable*, 786 F.3d at 141, his federal claim is barred by the Eleventh Amendment. *See O'Connor v. Eubanks*, 83 F.4th 1018, 1021, 1024 (6th Cir. 2023) (per curiam) (takings claim based on Michigan's unclaimed property act barred by the Eleventh Amendment); *see also EEE Minerals*, 81 F.4th at 816 (takings claim against South Dakota barred where plaintiff "simply repackages her claim for monetary relief as a request for an injunction that cures past injuries and

---

[10]    As the Supreme Court has observed, the class of cases seeking *de facto* retroactive relief stretch *Ex parte Young* "too far" and "would upset the balance of federal and state interests that it embodies." *Papasan*, 478 U.S. at 277. "Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant. This is true if the relief is expressly denominated as damages. . . . It is also true if the relief is tantamount to an award of damages for a past violation of federal law, even though styled as something else." *Id.* at 278.

requires the payment of just compensation"); *74 Pinehurst LLC v. New York*, 59 F.4th 557, 570 (2d Cir. 2023) (courts have "consistently held that sovereign immunity trumps the Takings Clause where, as here, the state provides its own remedy for an alleged violation"); *Arnett v. Strayhorn*, 515 F.Supp.2d 690, 693 (W.D. Tex. 2006), *aff'd sub nom. Arnett v. Combs*, 508 F.3d 1134 (5th Cir. 2007) (takings claim brought against state comptroller arising from funds held under Texas's unclaimed property act barred by Eleventh Amendment).

As the district court correctly observed, Mr. Narrigan "is really seeking a 'reparative injunction' requiring the Commonwealth use an interest rate of his choosing when it returns his property."  RA40.  But only prospective relief is available under *Ex parte Young*, and "[s]uch an injunction cannot be fairly characterized as prospective."  *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023).  Although "[t]here may be a continuing liability for a past harm . . . there is no ongoing violation here*." Cotto*, 126 F.4th at 769.

As in *Cotto*, this Court should find because there is no ongoing violation from the "taking" of Mr. Narrigan's property, Eleventh Amendment sovereign immunity bars Mr. Narrigan's claims, and affirm.

### 2.    Federal Equitable Relief is Not Available in Takings Cases Where a State Law Remedy Exists

Further, as the Supreme Court has observed, where the courts of the Commonwealth provide a forum for a claim pursuant to the Takings Clause, federal

courts have not recognized a parallel federal cause of action. *DeVillier v. Texas*, 601 U.S. 285, 291-93 (2024). Instead, the appropriate remedy for an unconstitutional taking is an award of just compensation for the property taken, not an injunction or a declaration. In *Knick*, the Supreme Court explained that the Takings Clause confers a right to seek monetary compensation because of governmental action, and "[s]o long as the property owner has some way to obtain compensation *after the fact*, governments need not fear that courts will enjoin their activities." 588 U.S. at 185 (2019) (emphasis added).

That makes sense: given that states are constitutionally permitted to take property so long as they pay just compensation to the owner, federal courts should not preemptively interfere with their ability to do so unless no mechanism for litigating the right to just compensation exists. Stated another way, "[a]s long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking." *Id.* at 201. Accordingly, when injunctive relief has historically been awarded by federal courts in takings cases against arms of state government, it was because no legal route to obtaining just compensation had been established in the relevant state. *Id.* at 199-201. "Today," however, "because the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking, equitable relief is generally unavailable." *Id.* at 201; *see also Talleywhacker, Inc. v. Cooper*,

26

465 F.Supp.3d 523, 541 (E.D.N.C. June 8, 2020) (quoting *Knick* and finding "plaintiffs are unlikely to prevail on their claim under the Takings Clause"); *Xponential Fitness v. Arizona*, 2020 WL 3971908, at *9 (D. Ariz. July 14, 2020) (citing *Knick* and finding, "Plaintiffs' Fifth Amendment takings claim cannot support their request for injunctive relief."); *Willowbrook Apartment Assocs., LLC v. Mayor & City Council of Baltimore*, 2020 WL 3639991, at *3 (D. Md. July 6, 2020) (relying on *Knick* and recognizing, "as multiple courts have explained, the proper remedy for a Takings violation is not injunctive relief, but rather monetary damages.").

Accordingly, if Mr. Narrigan believes he is entitled to relief for an unconstitutional taking of his property in violation of the Fifth Amendment (which, as set forth below, has not occurred), he should seek just compensation remedies in state court. Because Mr. Narrigan faces no jurisdictional bar to bringing a colorable claim in State court, no basis exists for any federal court to preemptively order injunctive relief on such claims. *See Knick* at 198-201; *see also Maine Educ. Ass'n*, 695 F.3d at 152 & n.3 ("ordinarily, injunctive relief is not available under the Takings Clause"); *EEE Minerals*, 81 F.4th at 816 ("equitable relief is unavailable to enjoin an alleged taking of private property where, as here, a remedy at law is available through a suit for just compensation in state court").

### 3. Mr. Narrigan's Arguments To The Contrary Are Unavailing

In attempting to distinguish *Cotto*, *Edelman*, and *Papasan*—which are, individually and collectively, fatal to Mr. Narrigan's claims, as the district court held—Mr. Narrigan mis-cites and misinterprets a battery of precedent from this Court and the Supreme Court.

*First*, Mr. Narrigan's reliance on *Knick* for the proposition that he "is entitled to proceed directly to federal court with his takings claim under §1983," Br. at 8, 23, is misplaced: Mr. Narrigan ignores that *Knick* involved a municipality (to which the Eleventh Amendment is inapplicable), not a State (which the Eleventh Amendment expressly protects). *See Jinks v. Richland County*, 538 U.S. 456, 466 (2003) ("[M]unicipalities, unlike States, do not enjoy a constitutionally protected immunity from suit."). In fact, the Supreme Court stated unequivocally that *Knick*'s holding "will not expose governments to new liability." 588 U.S. at 205. In short, *Knick* did nothing to abrogate Eleventh Amendment immunity nor to expand the scope of liability under *Ex parte Young*.

As a result, "[e]very circuit to consider the question has held that *Knick* did not change states' sovereign immunity from takings claims for damages in federal court, so long as state courts remain open to those claims." *Pavlock v. Holcomb*, 35 F.4th 581, 589 (7th Cir. 2022) (listing cases). "[T]he overwhelming weight of authority among the circuits . . . [has] consistently held that sovereign immunity

28

trumps the Takings Clause where, as here, the state provides its own remedy for an alleged violation." *74 Pinehurst LLC v. New York*, 59 F.4th 557, 570 (2d Cir. 2023), *cert. denied*, 218 L. Ed. 2d 66 (Feb. 20, 2024).

Mr. Narrigan further misreads *Knick* in attempting to distinguish *Knick's* reassurance that "[a]s long as just compensation remedies are available—as they have been for nearly 150 years—injunctive relief will be foreclosed." 588 U.S. at 205; Br. at 24. Mr. Narrigan incorrectly contends that the Court referred only to the scope of the plaintiff's requested injunction in that case. To the contrary, the Court very clearly referenced precisely the same federalism concerns raised in the district court's opinion: that an injunction of the kind Mr. Narrigan seeks here would "commandeer the Commonwealth's treasury in a manner inconsistent with the Commonwealth's status as an equal sovereign and reward artful pleading to evade the reach of the Eleventh Amendment." RA41; *see Knick*, 588 U.S. at 203-205. To that point, the *Knick* majority, in addressing the federalism and reliance concerns raised in Justice Kagan's dissent, *see* 588 U.S. at 218 (Kagan, J., dissenting), confirmed that "[o]ur holding that uncompensated takings violate the Fifth Amendment will not expose governments to new liability; it will simply allow into federal court takings claims that otherwise would have been brought as inverse condemnation suits in state court. Governments need not fear that our holding will lead federal courts to invalidate their regulations as unconstitutional." 588 U.S. at

205.  Indeed, *Knick* expressly held that "because the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking, equitable relief is generally unavailable. As long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking." *Knick*, 588 U.S. at 201.

*Second*, Mr. Narrigan also mischaracterizes *Edelman*, 415 U.S. at 667-68, stating that "[t]he Supreme Court upheld [an] injunction requiring that future payments comply with federal regulations despite the fiscal consequences to state treasuries because they were 'the necessary result of compliance with decrees which by their terms were prospective in nature.'" Br. at 25-26. *Edelman* held nothing of the sort, and the quoted language is taken entirely out of context.  In reality, this language was used by the Court to draw a contrast between *Edelman* and prior cases, such as *Goldberg v. Kelly*, 397 U.S. 254 (1970), where the Court observed that providing additional procedural protections for recipients of welfare benefits prior to termination of benefits would doubtless have a future effect on state treasuries. By contrast, *Edelman* held that where, as here, a requested injunction requires a specific "payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation" to an injured individual, "it is in practical effect indistinguishable in many aspects from an award of damages against the State."  415 U.S. at 668.

Here, Mr. Narrigan expressly seeks a declaration that he is entitled to a specific measure of compensation from the Commonwealth, and an injunction requiring the Treasurer's compliance.    RA19-20.    That relief is likewise "indistinguishable" from a damages award.  If he prevails on his allegations, such an award "will to a virtual certainty be paid from state funds," and will be "measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." *Id*. *Edelman* expressly held that such relief is barred by the Eleventh Amendment, and *Edelman* undermines rather than supports Mr. Narrigan's claim.

### C.    Mr. Narrigan Fails To State A Takings Claim

Finally, even if this Court were to reach the merits of Mr. Narrigan's Takings claim, it should affirm the judgment of the district court.  Assuming *arguendo* that Mr. Narrigan is the true owner of unclaimed property in the possession of the Commonwealth pursuant to the Act *and* that the Commonwealth will not compensate him for the full time-value of that property when he claims it, Mr. Narrigan does not state a plausible takings claim.

As the district court concluded, Mr. Narrigan's property "was not taken." RA40.  "It was abandoned through his own neglect." *Id*.  And where private property is deemed abandoned, or rights to it have lapsed by operation of state law, states have never been required to "compensate the owner for the consequences of his own

neglect." *Texaco*, 454 U.S. at 530. "It is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no 'taking' that requires compensation." *Id.* at 531. Rather, the Commonwealth essentially holds Mr. Narrigan's property in trust, as a courtesy, until he seeks to claim it. The Commonwealth does not have to do so; it is well settled that a state may take custody of or assume title to abandoned funds consistently with the Takings Clause. *Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631, 646 (2023).

As the district court observed, courts have long declined to reward plaintiffs for their own recalcitrance in asserting property rights. RA40*; see United States v. Locke*, 471 U.S. 84, 107 (1985) ("Their property loss was one appellees could have avoided with minimal burden; it was their failure to file on time—not [state action]—that caused the property right to be extinguished."); *Hawkins v. Barney's Lessee*, 30 U.S. 457, 466 (1831) ("What right has any one to complain, when a reasonable time has been given him, if he has not been vigilant in asserting his [property] rights?" (alteration added)). Moreover, statutorily-determined interest is at least sufficient to compensate Mr. Narrigan. *Turnacliff v. Westly*, 546 F.3d 1113, 1119 (9th Cir. 2008) ("To the extent that it was even entitled to it, the Estate has received "just compensation," because California returned the Estate's abandoned property, with statutorily-determined interest.").

32

It follows, therefore, that a state's failure or refusal to pay the owner compensation for the "time value" of the property is also not a taking. *See Clark v. Strayhorn*, 184 S.W.3d 906, 910 (Tex. App. 2006) ("We hold that there is no unconstitutional taking of interest on property that is presumed abandoned."); *see also Smolow v. Hafer*, 959 A.2d 298, 304 (Penn. 2008) ("[O]wners of presumptively abandoned property have no claim to the interest earned while the abandoned property is held in perpetual temporary custody of the state. The [statutory] procedures [for unclaimed property] result not from a taking by overt act of the Commonwealth, but are triggered by the neglect of the owner.").

Given that states may, consistently with the Constitution, pass laws resulting in the extinguishment of property rights for property that has been abandoned , it stands to reason that "once property is presumed abandoned, the State's lawful use of that property for its own benefit cannot be an unconstitutional taking." *Clark*, 184 S.W.3d at 814. As explained by the Illinois Supreme Court:

> [I]f a state legislature can constitutionally enact a statute that divests a neglectful owner of all rights in certain property absent the performance of specified activities evincing a continued and possessory interest in the property over the prescribed statutory period, then it logically follows that the legislature can, constitutionally, take the less drastic measure of enacting a statute that operates to divest those owners of only certain incidents of ownership, without mandating divestiture of all rights in the property.

*Cwik v. Giannoulias*, 930 N.E.2d 990, 995-96 (Ill. 2010); *see also Dani v. Miller*, 374 P.3d 779, 794 (Okla. 2016) ("Just because the Legislature chose not to terminate

an owner's rights in abandoned property does not mean it is required to allow a claim for interest.").

Simply put, the Commonwealth's diligence in collecting unclaimed property and putting it to use until an owner steps forward does not amount to an unconstitutional taking of property.[11]  Accordingly, Mr. Narrigan's complaint fails to state a plausible claim and was properly dismissed.

## CONCLUSION

For the foregoing reasons, the Treasurer respectfully requests that the Court affirm the dismissal and judgment of the district court.

Respectfully submitted,

ANDREA JOY CAMPBELL, in her official capacity as Attorney General of the Commonwealth of Massachusetts

/s/ Arjun K. Jaikumar
Arjun K. Jaikumar, First Cir. No. 1182625
Assistant Attorney General
Government Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2856
arjun.k.jaikumar@mass.gov

September 18, 2025

---

[11]     "Unclaimed property, whether lost, mislaid, forgotten, or abandoned, is a drag on the economy.  With no owner (abandoned property), or no known owner (lost or mislaid or forgotten property), a property is unlikely to be put to its most productive use." *Cerajeski v. Zoeller*, 735 F.3d 577, 579 (7th Cir. 2013).

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

I hereby certify that:

1.  This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because the brief contains 8,521 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 with 14-point, Times New Roman font.

*/s/ Arjun K. Jaikumar*

September 18, 2025

## CERTIFICATE OF SERVICE

I hereby certify that this brief, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), on September 18, 2025.

*/s/ Arjun K. Jaikumar*
Counsel for the Defendant-Appellee

# **ADDENDUM**

Memorandum and Order Regarding Defendant's Motion to Dismiss………...Add.1

Order Dismissing Case…………………………………………………...Add. 18

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THOMAS R. NARRIGAN,

      Plaintiff,

      v.

DEBORAH B. GOLDBERG, in her official
capacity as TREASURER and RECEIVER
GENERAL OF THE COMMONWEALTH
OF MASSACHUSETTS,

      Defendant.

Civil Action No. 24-10107-MGM

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION TO DISMISS
(Dkt. No. 18)

March 25, 2025

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

This case presents a constitutional challenge to the Disposition of Unclaimed Property Act,
Mass. Gen. Law ch. 200A, enacted by the Massachusetts General Court in 1950. Thomas R. Narrigan
("Plaintiff"), on behalf of himself and a proposed class of all others similarly situated, alleges certain
provisions of the Act—those controlling the payment of interest when property is returned—
constitute a taking of private property for public use without the payment of just compensation. This
taking, he says, violates the Fifth Amendment to the United States Constitution as incorporated to the
States by the Fourteenth Amendment.

To remedy this claimed constitutional violation, Plaintiff does not seek monetary
compensation directly from the Commonwealth. Rather, invoking the doctrine set forth in *Ex parte*

*Young*, 209 U.S. 123 (1908), he requests as follows: (i) a declaration that the Commonwealth's use of unclaimed property constitutes a taking for purposes of the Fifth Amendment; (ii) a declaration that the Commonwealth must pay just compensation when the unclaimed property is returned and setting the appropriate measure of such compensation; and (iii) an injunction requiring the Commonwealth comply with the aforementioned declarations when processing future unclaimed property requests. (Dkt. No. 1 at 12.)

In response, the Treasurer and Receiver General of the Commonwealth ("Treasurer"), Deborah B. Goldberg, moves to dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). More specifically, the Treasurer asserts Plaintiff's complaint is barred by the Eleventh Amendment to the federal constitution, Plaintiff's claim is not ripe for adjudication, Plaintiff lacks standing to pursue these claims in federal court as required by Article III of the federal constitution, and Plaintiff fails to state a plausible claim for relief.

For the following reasons, the court concludes Plaintiff lacks standing to seek injunctive or declaratory relief and this suit, as pled, is barred by the Eleventh Amendment. But, even if these jurisdictional impediments did not exist, Plaintiff's complaint fails to state a plausible claim for relief pursuant to Rule 12(b)(6), providing an alternative and independent grounds for dismissal. The complaint is therefore dismissed.

## II.   BACKGROUND

### A.  Statutory Background

In 1950, the Massachusetts General Court enacted Chapter 200A to "set[] forth a comprehensive scheme governing the disposition of abandoned property." *Matter of Olchowski*, 153 N.E.3d 376, 384 (Mass. 2020) (internal quotation marks omitted; alteration added). The Act's passage came in response to a request from then Massachusetts Governor Paul A. Dever, who explained:

> We need to adopt a law which will cover the disposition of *all kinds* of abandoned and
> unclaimed property; will protect true owners' rights when and if they appear to

substantiate their claims; and provide a smooth and simple procedure for transferring such property into the state treasury and out of the hands of those in unjust possession.

*Treasurer & Receiver Gen. v. John Hancock Mut. Life Ins. Co.*, 446 N.E.2d 1376, 1383 (Mass. 1983) (quoting 1950 Mass. Sen. Doc. No. 1, at 22) (alteration in original)). "The legislative purposes of the law are threefold: 'protecting true owners' rights, bringing additional revenues to the treasury, and providing a procedure for the transfer of abandoned property.'" *Matter of Olchowski*, 153 N.E.3d at 384 (quoting *Biogen IDEC MA, Inc. v. Treasurer & Receiver Gen.*, 908 N.E.2d 740, 743 (Mass. 2009)).

To effectuate this legislative purpose, the Act defines property broadly to include:

all intangible property, including: (i) money, money orders, checks, drafts, deposits, interest, dividends, income and bonds; (ii) credit balances, customer overpayments, security deposits, refunds, credit memos, unpaid wages, unused airline tickets, mineral proceeds and unidentified remittances; (iii) stocks and other intangible ownership interests in business associations; (iv) money deposited to redeem stocks, bonds, coupons and other securities, or to make distributions; (v) amounts due and payable under the terms of an annuity or insurance policy; (vi) amounts distributed from a trust or custodial fund established under a plan to provide any health, pension, vacation, severance, retirement, death, stock purchase, profit sharing, employees savings, supplemental unemployment insurance, or similar benefit; and all tangible property, which includes all other property not defined herein as intangible.

Mass. Gen. Law ch. 200A, § 1. It further defines "abandoned property" as "property presumed unclaimed and abandoned pursuant to this chapter." *Id.* When exactly property is presumed abandoned depends on the nature of the property. *See* Mass. Gen. Law ch. 200A, §§ 1a-6e. In broad terms, the presumption of abandonment attaches when the property has remained untouched for a period of one to three years and the property's owner has not communicated with the party overseeing the property for a similar length of time. *See generally id.*

After the presumption of abandonment attaches, the property's custodian must try to notify the "apparent owner" of its existence. Mass. Gen. Law ch. 200A, § 7a. If this fails, the custodian must file a report with the Treasurer, Mass. Gen. Law ch. 200A, § 7, before ultimately surrendering the property to the Treasurer, Mass. Gen. Law ch. 200A, § 8a. The Treasurer then must satisfy her own obligation to provide notice, in this case by publication in "a newspaper of general circulation." Mass.

Gen. Law ch. 200A, § 8. Property remaining unclaimed after each of these steps "vest[s] in the commonwealth." Mass. Gen. Law ch. 200A, § 9(a) (alteration added).

However, "[a]ny person claiming an interest in property surrendered to the state treasurer under the provisions of this chapter may establish his claim at any time thereafter." Mass. Gen. Law ch. 200A, § 10(a) (alteration added). The General Court delegated to the Treasurer the power to resolve these claims through an administrative hearing process. Mass. Gen. Law ch. 200A, § 10(b). These decisions are, however, subject to judicial review before the "district, municipal or superior court of the county wherein [the claimant] resides." Mass. Gen. Law ch. 200A, § 10(d) (alteration added). And ultimately, the decision may be appealed to the Supreme Judicial Court. *Id.*

A claimant does not typically receive the return of their actual property, but rather a cash equivalent, as property in the possession of the Commonwealth is eventually liquidated. In the case of non-securities property, this occurs after one year; while in the case of securities, this generally does not occur for three years. *See* Mass. Gen. Law ch. 200A, § 9(b). The proceeds of these liquidation sales are deposited in a special fund—the Unclaimed Property Fund. Mass. Gen. Law ch. 200A, § 9(e). Once the Unclaimed Property Fund reaches $500,000, any excess money is deposited into the Commonwealth's General Fund. *See id.* When a claim is successful the funds are paid out from the Unclaimed Property Fund, with the claimant entitled to a certain degree of interest depending on whether the underlying abandoned property was interest bearing or not. Mass. Gen. Law ch. 200A, § 10(e). Claims originating from non-interest-bearing property receive a rate of 1% per year for a maximum of fourteen years. *Id.* In contrast, claims originating from interest-bearing property receive the same rate of interest as the underlying property, but only to a maximum rate of 5% for a maximum of fourteen years. *Id.* The fourteen-year period begins to run on the date the property is delivered to the Treasurer. *Id.*

### B. Factual Background

The Commonwealth holds less then $100 of unclaimed property in Plaintiff's name. This property is described as "miscellaneous intangible property" and "refunds." Plaintiff's funds are among the more than $3,000,000,000 in unclaimed property allegedly held by the Commonwealth. The Commonwealth has paid out nearly $787,000,000 from the fund in the last five years, but Plaintiff has not sought to claim any of his property.

### III.　LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(1), which governs jurisdictional challenges "grounded in considerations of [standing], ripeness, mootness, sovereign immunity, and the existence of federal question jurisdiction," the court may apply one of two approaches depending on the nature of the jurisdictional challenge. *Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 363 (1st Cir. 2001) (alteration added). Here, as the Treasurer has raised only a facial challenge to this court's jurisdiction, the court "take[s] as true all well-pleaded facts in the plaintiffs' complaints, scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor." *Fothergill v. United States*, 566 F.3d 248, 251 (1st Cir. 2009) (alteration added). "If the well-pleaded facts, evaluated in that generous manner, do not support a finding of federal subject-matter jurisdiction, the orders of dismissal must [issue]." *Id.* (alteration added).

As Defendant also raises a Fed. R. Civ. P. 12(b)(6) challenge, the court applies the standard set forth in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to this branch of the motion. Therefore, the complaint must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court must credit well-pleaded factual allegations as true and draw all

reasonable inferences from those facts in the non-moving party's favor. *See Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 36 (1st Cir. 2013). "Well-pleaded facts must be non-conclusory and non-speculative." *Barchock v. CVS Health Corp.*, 886 F.3d 43, 48 (1st Cir. 2018) (internal quotation omitted). For a claim to proceed, the complaint must allege enough facts to plausibly establish each material element of the claim and "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Pitta v. Medeiros*, 90 F.4th 11, 17 (1st Cir. 2024). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc) (citing *Twombly*, 550 U.S. at 555)

## IV.    DISCUSSION

Because "courts must adjudicate plausible challenges to their jurisdiction prior to adjudicating the merits of a case," the court's analysis begins with standing, before turning to the Eleventh Amendment, as these jurisdictional issues "preclude[] [the court] from exercising judicial power over [the Treasurer]." *Brait Builders Corp. v. Massachusetts, Div. of Cap. Asset Mgmt.*, 644 F.3d 5, 10 (1st Cir. 2011) (alteration added). Then, in the interest of judicial efficiency, the court addresses the substance of Plaintiff's constitutional claim.

### A.    Standing

This court's "judicial power is limited by Article III of the Constitution to actual cases and controversies." *Kerin v. Titeflex Corp.*, 770 F.3d 978, 981 (1st Cir. 2014). "Standing is built on a single basic idea—the idea of separation of powers." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024) (internal quotation marks omitted). "The requirement that the plaintiff possess a personal stake helps ensure that courts decide litigants' legal rights in specific cases, as Article III requires, and that courts do not opine on legal issues in response to citizens who might 'roam the country in search of governmental wrongdoing.'" *Id.* at 379 (quoting *Valley Forge Christian Coll. v.*

*Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 487 (1982)). "Standing also tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Id.* (internal quotation marks omitted). Ultimately, "[o]ur system of government leaves many crucial decisions to the political processes, where democratic debate can occur and a wide variety of interests and views can be weighed." *Id.* at 380 (alteration added; internal quotation marks omitted).

To satisfy this constitutional requirement, "a plaintiff must sufficiently plead three elements: injury in fact, traceability, and redressability." *Kerin*, 770 F.3d at 981 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)). "[A] plaintiff must 'demonstrate standing separately for each form of relief sought.'" *Nat'l Ass'n of Gov't Emps., Inc. v. Yellen*, 120 F.4th 904, 910 (1st Cir. 2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021)). "Past harm is insufficient to confer standing to seek forward-looking declaratory or injunctive relief; there must be ongoing injury or a sufficient threat that the injury will recur." *Id.* (internal quotation marks omitted). This risk of future harm must be "certainly impending." *Id.* "A threatened harm that is too attenuated or too speculative does not provide standing to seek an injunction." *Roe v. Healey*, 78 F.4th 11, 20 (1st Cir. 2023) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)).

Here, Plaintiff's factual allegations, as supplemented by his legal arguments on the question of standing, do not satisfy the court that Article III's requirements are met.[1] Plaintiff alleges his constitutional harm accrued when "the Treasurer took his property into custody and, as required by the Act, put the property to public use without paying just compensation." (Dkt. No. 32 at 20.) This harm would support standing for retrospective monetary relief. Plaintiff does not, however, bolster

---

[1] The court has not certified a class; thus, only Plaintiff's individual allegations are relevant to the standing analysis. *See Kerin*, 770 F.3d at 981.

this allegation of past harm by indicating he intends to abandon property in the future, intends to claim his property from the government, or is otherwise likely to suffer a similar taking in the future. These allegations are not sufficient to confer standing on a party seeking prospective relief. *See, e.g., Raymond v. Conine,* No. 2:23-CV-01195-CDS-MDC, 2024 WL 3498182, at *6-7 (D. Nev. July 22, 2024) (dismissing proposed class action challenging Nevada's unclaimed property scheme for lack of standing).

In response, Plaintiff contends his harm is ongoing because his property remains in the Commonwealth's accounts. But "[a]lthough those earlier actions may have present effect, that does not mean that they are ongoing." *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023) (alteration added). "Plaintiff[] here ha[s] only alleged that [he] w[as] injured by past takings . . . a prior taking is a past harm insufficient to confer standing for prospective relief, even when it is alleged that the government has unlawfully retained assets that rightfully belong to the plaintiff." *James v. Hegar*, 86 F.4th 1076, 1082 (5th Cir. 2023) (alterations added), *cert. denied*, 144 S. Ct. 1461 (2024).[2] Plaintiff "cannot manufacture standing merely by inflicting harm on [himself] based on [his] fears of hypothetical future harm that is not certainly impending," *Clapper*, 568 U.S. at 416 (alterations added); *see also Valley Forge Christian Coll.*, 454 U.S. at 487; *Light v. Davis,* No. 23-2785, 2024 WL 4144066, at *2 (3d Cir. Sept. 11, 2024) (rejecting notion a Takings claim may be premised on a "hypothetical harm"). This analysis applies with equal force to Plaintiff's request for declaratory relief, as "a controversy has not yet arisen, [and] declaratory judgment is inappropriate." *Ka Lok Lau v. Holder*, 880 F. Supp. 2d 276, 281 (D. Mass. 2012) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)); *see also Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241 (1937) (explaining the existence of "real and substantial controversy

---

[2] When the Treasurer argues this court cannot enjoin a future taking, Plaintiff asserts his harm occurred in the past when his property entered state custody. But in addressing this past taking being remediable through monetary damages, Plaintiff then argues the harm will manifest in the future when he tries to reclaim his property and is denied the proper rate of interest.

admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts" separates a permissible declaratory judgment from an impermissible advisory opinion); *Am. C.L. Union of Massachusetts v. U.S. Conf. of Cath. Bishops,* 705 F.3d 44, 53-54 (1st Cir. 2013). Accordingly, Plaintiff lacks standing to seek prospective relief against the Treasurer.

### B.   The Eleventh Amendment

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI; *see also Alden v. Maine,* 527 U.S. 706, 727-28 (1999) (explaining that, despite the plain text of the amendment, it applies with equal force to a citizen trying to sue her own state in federal court). "The Supreme Court has clearly said that the Eleventh Amendment bars federal suits by citizens against the state or state agencies and that this 'jurisdictional bar applies regardless of the nature of the relief sought.'" *O'Neill v. Baker,* 210 F.3d 41, 47 (1st Cir. 2000) (quoting *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984)). "Therefore, '[u]nless a State has waived its Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the relief sought.'" *Brait Builders Corp. v. Massachusetts, Div. of Cap. Asset Mgmt.*, 644 F.3d 5, 11 (1st Cir. 2011) (quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14 (1985)).

### 1.   *Abrogation and Waiver*

The Commonwealth has not waived its Eleventh Amendment immunity, nor has Plaintiff identified a valid abrogation of that immunity. Plaintiff cites 42 U.S.C. § 1983 as the basis for this suit, but a State is not a person for purposes of Section 1983 liability, and Section 1983 did not abrogate the States' Eleventh Amendment immunity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63-67 (1989); *Quern v. Jordan,* 440 U.S. 332, 342-45 (1979). To the extent Plaintiff asserts a free-standing cause

of action arising out of the Fifth Amendment and purportedly abrogating sovereign immunity, this cause of action has not yet been recognized when the courts of the Commonwealth are open to Takings Clause claims. *See DeVillier v. Texas,* 601 U.S. 285, 291-93 (2024). Plaintiff's reliance on selective quotations from *Knick v. Twp. of Scott, Pennsylvania,* 588 U.S. 180 (2019), for the proposition that the case may have altered Eleventh Amendment analysis in the Takings Clause context is misplaced. *Knick* involved a municipal defendant, not a state. Accordingly, "[e]very circuit to consider the question has held that *Knick* did not change states' sovereign immunity from takings claims for damages in federal court, so long as state courts remain open to those claims." *Pavlock v. Holcomb*, 35 F.4th 581, 589 (7th Cir. 2022) (collecting cases from the 4th, 5th, 6th, and 10th Circuits holding the same), *cert. denied*, 143 S. Ct. 374 (2022); *see also 74 Pinehurst LLC v. New York,* 59 F.4th 557, 570 n. 7 (2d Cir. 2023) (collecting cases holding the same), *cert. denied*, 218 L. Ed. 2d 66 (Feb. 20, 2024).

   *2. Ex parte Young*

   In addition to waiver and abrogation, a third limited exception to Eleventh Amendment immunity exists. Under the doctrine established in *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may sue a state official in her official capacity to "compel them to comply with federal law," but "[s]uch suits . . . may only seek prospective injunctive or declaratory relief; they may not seek retroactive monetary damages or equitable restitution." *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 478 (1st Cir. 2009). In applying *Ex parte Young,* the court is mindful that "[t]he real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading," thereby requiring an inquiry that looks beyond the labels and characterizations urged by the parties. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997).

   Plaintiff's complaint does not adequately invoke *Ex parte Young.* As a threshold matter, injunctive relief is only appropriate when the moving party demonstrates the "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Esso Standard Oil Co. v.*

*Lopez-Freytes*, 522 F.3d 136, 148 (1st Cir. 2008) (quoting *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006)).[3] This traditional equitable principle is not abrogated when *Ex parte Young* is invoked. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021); *see also Huffman v. Pursue, Ltd.,* 420 U.S. 592, 603 (1975). Here, the text of the Takings Clause uniquely contemplates an adequate remedy at law in the form of "just compensation"—a term synonymous with monetary damages. U.S. Const. amend. V.[4] Therefore, "ordinarily, injunctive relief is not available under the Takings Clause," *Maine Educ. Ass'n Benefits Tr. v. Cioppa*, 695 F.3d 145, 152 n. 3 (1st Cir. 2012), because "[a]s long as just compensation remedies are available—as they have been for nearly 150 years—injunctive relief will be foreclosed," *Knick*, 588 U.S. at 205; *see also id.* at 185 ("That does not mean that the government must provide compensation in advance of a taking or risk having its action invalidated . . . governments need not fear that courts will enjoin their activities."). "Massachusetts law provides a means for a property owner to obtain just compensation in state court for property that is taken by the state."

---

[3] As the Supreme Court has repeatedly held, "the inquiry into whether suit lies under *Ex parte Young* does not include an analysis-or prediction-of the merits of the federal claim." Wright & Miller, 17A Fed. Prac. & Proc. Juris. § 4232 (3d ed.) (collecting cases). However, this is separate and distinct from "meet[ing] the usual equitable requirements for an injunction." *Id.* (alteration added); *cf. Cotto v. Campbell*, 126 F.4th 761, 768-69 (1st Cir. 2025) (parsing the boundary between what constitutes impermissible merits analysis and permissible equitable considerations). These requirements, including irreparable injury, remain in place for those seeking to invoke *Ex parte Young*, as "no injunction ought to issue against officers of a State clothed with authority to enforce the law in question, unless in a case reasonably free from doubt and when necessary to prevent great and irreparable injury." *Huffman*, 420 U.S. at 603 (quoting *Massachusetts State Grange v. Benton*, 272 U.S. 525, 527 (1926) (Holmes, J.)); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381-82 (1992) (explaining resort to *Young* is only appropriate when the plaintiff is threatened with irreparable injury); *cf. Montanez-Allman v. Garcia-Padilla,* 782 F.3d 42, 46 (1st Cir. 2015) (citing *Mass. State Grange* with approval). An injury under the Takings Clause is, however, inherently reparable through just compensation.

[4] "As its name suggests, then, just compensation is, like ordinary money damages, a compensatory remedy." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 710 (1999); *see also* "Compensation," Black's Law Dictionary (12th ed., 2024) (categorizing "just compensation" as a sub-category of the broader term "compensation," and noting compensation contemplates a monetary remedy).

*Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 390-91 (D. Mass. 2020) (citing Mass. Gen. Law ch. 79, § 10, declining to enjoin a taking).[5] The court cannot enjoin the Treasurer to halt an ongoing taking or prevent a future taking in these circumstances as a matter of law.

When, as is the case here, state law provides both an adequate forum to raise Takings Clause claims and requires the payment of some amount of interest, Plaintiff is really seeking a "reparative injunction" requiring the Commonwealth use an interest rate of his choosing when it returns his property. But "[s]uch an injunction cannot be fairly characterized as prospective," *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023), because while "[t]here may be a continuing liability for a past harm . . . there is no ongoing [constitutional] violation here" necessitating prospective relief, *Cotto v. Campbell*, 126 F.4th 761, 769 (1st Cir. 2025) (alteration added). Rather, this particular reparative injunction is an attempt to secure "relief [that] is tantamount to an award of damages for a past violation of federal law, even though styled as something else." *Papasan v. Allain*, 478 U.S. 265, 278 (1986) (alteration added); *see also Cotto*, 126 F.4th at 769-70. This is not the sort of ancillary impact on the treasury contemplated in *Edelman*, as the *Edelman* Court foresaw the occasional necessity of expending state funds to effectuate an otherwise prospective injunction, not a mechanism for raiding state treasuries while seeking recompense for past harms.[6] The only injunction theoretically available in this case is

---

[5] Other courts to address the issue have similarly concluded the Takings Clause does not provide for injunctive relief when claims for monetary relief may be pursued in state court. *See, e.g., EEE Mins., LLC v. State of N. Dakota,* 81 F.4th 809, 816 (8th Cir. 2023), *cert. denied sub nom. EEE Mins., LLC v. North Dakota,* 144 S. Ct. 1097 (2024); *Laborers' Int'l Union of N. Am., Loc. 860 v. Neff,* 29 F.4th 325, 334-35 (6th Cir. 2022); *Seven Up Pete Venture v. Schweitzer,* 523 F.3d 948, 956 (9th Cir. 2008).

[6] *Edelman v. Jordan*, 415 U.S. 651, 668 (1974); *see also Green v. Mansour,* 474 U.S. 64, 68 (1985) (explaining "compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment"); *Milliken v. Bradley*, 433 U.S. 267, 288-91 (1977) (illustrating when it is appropriate to require expenditure of state funds); *Cotto*, 126 F.4th at 770 (explaining *Young* cannot apply when the relief "amount[s] to accrued monetary liabilit[ies]" (first alteration added; second alteration in original; internal quotation marks omitted)); *Whalen v. Massachusetts Trial Ct.*, 397 F.3d 19, 29-30 (1st Cir. 2005) (holding an injunction seeking restoration of retirement credit and pension benefits did not fit the *Ex parte Young* exception).

therefore beyond the scope of *Ex parte Young*.

The court's conclusion regarding the availability of injunctive relief might be different if Massachusetts refused to pay any amount of interest when returning unclaimed property. *See, e.g., Ambriz v. Hegar,* No. A-22-CV-1067-DII, 2023 WL 4850909, at *1, 3 (W.D. Tex. June 20, 2023*), report and recommendation adopted,* No. 1:22-CV-01067-DII, 2023 WL 4853403 (W.D. Tex. July 28, 2023). This scenario could implicate a prospective or ongoing constitutional violation capable of redress through resort to *Ex parte Young*. In this case, however, Plaintiff "seeks specific damages or a declaration that he or class members are owed specific damages under the statute" and this type of "claim does not fall under the *Young* exception." *Id.* at *3.[7] Rather than "vindicat[ing] the Supremacy Clause," an order of this nature would commandeer the Commonwealth's treasury in a manner inconsistent with the Commonwealth's status as an equal sovereign and reward artful pleading to evade the reach of the Eleventh Amendment. *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 263 (2011) (Kennedy, J., concurring) (alteration added); *see also Coeur d'Alene Tribe of Idaho*, 521 U.S. at 270-71, 281-88; *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 114 n. 25 (1985).[8]

Moreover, even assuming there is an ongoing constitutional violation that the court has the

---

[7] *See Schweitzer,* 523 F.3d at 956 ("A remedy for past injury, even if it purports to be an injunction against state officers requiring the future payment of money, is barred because relief inevitably come[s] from the general revenues of the State . . . , and thus … resembles far more closely [a] monetary award against the State itself, which is forbidden under the Eleventh Amendment." (internal quotation marks omitted; alterations in original)); *Los Molinos Mut. Water Co. v. Ekdahl*, 695 F. Supp. 3d 1174, 1189-90 (E.D. Cal. 2023).

[8] For example, the Supreme Court has repeatedly recognized that "[e]quitable relief [is] not available [against the federal government to enjoin a taking] because monetary relief [is available] under the Tucker Act." *Knick*, 588 U.S. at 195 (alteration added); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984); *see also Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 697 n. 18 (1949); *Hurley v. Kincaid*, 285 U.S. 95, 103-05 (1932). To alter this rule when the Commonwealth is the defendant would infringe on principles of federalism. *See Alden*, 527 U.S. at 749 (warning against "plenary federal control of state governmental processes [which] denigrates the separate sovereignty of the States." (alteration added)).

power to enjoin, Plaintiff must also show the official named in the complaint has "some connection" with enforcement of the allegedly unconstitutional provision, such that an injunction would end the alleged constitutional violation. *Cotto*, 126 F.4th at 772-73. It is not apparent that the Treasurer has any authority to "change these [challenged] procedures." *Id.* at 772 (alteration added). Interest rates are not set by an administrative regulation promulgated by the Treasurer, nor does the Act delegate to the Treasurer the power to alter the interest rates. Rather, the rates are set forth in the plain text of the Act, while Mass. Gen. Law ch. 200A, § 10(e) imposes a mandatory duty on the Treasurer to comply with its terms when disbursing funds to successful claimants. In the face of these clear statutory directives, the Treasurer lacks the authority to unilaterally nullify select portions of the Act by authorizing distributions from the treasury in a manner inconsistent with the plain text of the Act, as "the Treasurer has no power to disburse any monies on behalf of the Commonwealth in the absence of an appropriation therefor, and then only where there exists a warrant executed by the Governor." *Bromfield v. Treasurer & Receiver Gen.*, 459 N.E.2d 445, 449 (Mass. 1983).[9] Therefore, "an injunction against the [the Treasurer] could not bring about the relief plaintiff[] seek[s], [meaning] the *Ex parte Young* exception does not apply." *Cotto*, 126 F.4th at 773 (alterations added).

Finally, Plaintiff's ancillary request for declaratory relief is similarly barred as a matter of law. "[S]uch a declaration would be the functional equivalent of an unwarranted injunction against the enforcement of the Act." *Baptiste*, 490 F. Supp.3d at 391. The First Circuit has squarely held a

---

[9] *See K.J. v. Superintendent of Bridgewater State Hosp.*, 173 N.E.3d 363, 368-70 (Mass. 2021) (discussing the doctrine of separation of powers in Massachusetts); *New England Div. of Am. Cancer Soc. v. Comm'r of Admin.*, 769 N.E.2d 1248, 1256 (Mass. 2002) ("It is beyond question that [t]he power to appropriate money of the Commonwealth is a legislative power. Under the Constitution it can be exercised only by the General Court and in the particular manner prescribed." (internal quotation marks omitted and alteration in original)); *In re Opinion of the Justs.*, 35 N.E.2d 5, 16 (Mass. 1941) (describing the limits of the executive branch's power of disbursal); *Cotto*, 126 F.4th at 773 (explaining the executive branch in Massachusetts cannot alter procedures set by the judicial branch); *Hearne v. Board of Educ. of City of Chicago*, 185 F.3d 770, 777(7th Cir. 1999) (noting, in the context of *Ex parte Young*, executive branch lacks generalized power to "nullify" laws).

declaratory judgment may not be used to "end run" around the Eleventh Amendment. *Cotto*, 126 F.4th at 772.

Accordingly, Plaintiff's complaint is barred by the Eleventh Amendment.

**C.     The Takings Claim**

As an alternate and independent grounds for dismissal, Plaintiff has also not alleged a viable Takings Clause claim. In *Texaco, Inc. v. Short*, 454 U.S. 516 (1982), the Supreme Court explained, "[i]t is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no 'taking' that requires compensation." *Id.* at 530 (alteration added). The Supreme Court "has [therefore] never required the State to compensate the owner for the consequences of his own neglect." *Id.* (alteration added). Rather, "[a]s a broad principle of jurisprudence . . . it is clear that a state, subject to constitutional limitations, may use its legislative power to dispose of property within its reach, belonging to unknown persons." *Standard Oil Co. v. State of New Jersey*, 341 U.S. 428, 435-36 (1951) (alteration added); *accord Delaware v. New York*, 507 U.S. 490, 497 (1993) (reiterating that "States as sovereigns may take custody of or assume title to abandoned personal property as *bona vacantia*"); *Roth v. Delano*, 338 U.S. 226, 230-31 (1949) (noting funds held by a national bank undergoing liquidation may pass by abandonment to the state); *Anderson Nat. Bank v. Luckett*, 321 U.S. 233, 241 (1944) (allowing abandoned bank accounts to escheat to Kentucky). More recently, in *Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631 (2023), the Supreme Court reiterated the continued viability of *Texaco* and its predecessor cases, explaining there is a "long tradition" of States taking possession of abandoned property without violating the Takings Clause. *Id.* at 646.[10]

---

[10] The *Tyler* Court went on to find abandonment did not apply, as the statute at issue—Minnesota's forfeiture scheme for collection of unpaid property taxes—was "not about abandonment at all." *Tyler*, 598 U.S. at 647. "It g[ave] no weight to the taxpayer's use of the property." *Id.* By contrast, here, abandonment is directly at issue. It is Plaintiff's failure to make any use of the property that triggers statutory abandonment according to the Massachusetts Act, thereby bringing the case under the umbrella of *Texaco*.

Consistent with these "broad principle[s] of jurisprudence," the majority of federal and state courts to consider the question have declined to find a taking when property passes into the hands of the State because of abandonment.[11] The Seventh Circuit, by contrast, has issued several decisions holding otherwise and allowing claims similar to Plaintiff's to proceed. *See generally Goldberg v. Frerichs,* 912 F.3d 1009 (7th Cir. 2019); *Kolton v. Frerichs,* 869 F.3d 532 (7th Cir. 2017), *as amended* (Nov. 9, 2017); *Cerajeski v. Zoeller,* 735 F.3d 577 (7th Cir. 2013); *Vargo v. Casey,* --F. Supp.3d--, No. 20-CV-1109-JDP, 2024 WL 4794692 (W.D. Wis. Nov. 14, 2024). But this court finds persuasive those decisions refusing to rely on the Seventh Circuit's precedent, as these cases are more faithful to "*Texaco*'s core holding that a state's control over abandoned property is not a taking that requires compensation under the Fifth Amendment." *Dillow v. Garity,* No. CV 22-1852, 2024 WL 1975458, at *4 (E.D. Pa. May 3, 2024); *see also Maron v. Patronis,* No. 4:22CV255-RH-MAF, 2023 WL 11891258, at *4-5 (N.D. Fla. Sept. 5, 2023); *Ambriz v. Hegar,* No. A-22-CV-1067-DII, 2023 WL 4850909, at *6-7 (W.D. Tex. June 20,

---

[11] *See, e.g., Peters v. Cohen,* No. 24-1040, 2025 WL 733237, at *2 (9th Cir. Mar. 7, 2025) (upholding California's statute); *Cote v. Off. of California State Controller,* No. 23-15375, 2024 WL 1108546, at *1 (9th Cir. Mar. 14, 2024) (reaffirming *Turnacliff v. Westly,* 546 F.3d 1113 (9th Cir. 2008), and *Suever v. Connell,* 579 F.3d 1047 (9th Cir. 2009), upholding California's statute), *cert. denied sub nom. Sykes v. State Controller Off.,* No. 24-162, 2024 WL 4427247 (U.S. Oct. 7, 2024), and *cert. denied sub nom. Cole-Kelly v. Cohen,* No. 24-158, 2024 WL 4427248 (U.S. Oct. 7, 2024), *reh'g denied,* No. 24-158, 2024 WL 4874752 (U.S. Nov. 25, 2024); *Osborne v. PNC Bank,* No. 24-11200, 2024 WL 4448791, at *3 (11th Cir. Oct. 9, 2024) (refusing to find property interest in unclaimed property necessary to support a Takings claim); *Simon v. Weissmann,* 301 F. App'x 107, 112-114 (3d Cir. 2008) (upholding Pennsylvania's statute, collecting cases from California, North Carolina, Louisiana, Texas, and Indiana holding similarly); *Warner v. Hillsborough Cnty. Clerk of Cts.,* No. 822CV01977MSSSPF, 2024 WL 553482, at *4-5 (M.D. Fla. Feb. 12, 2024) *Dillow v. Garity,* No. CV 22-1852, 2024 WL 1975458, at *4 (E.D. Pa. May 3, 2024); *Maron v. Patronis,* No. 4:22CV255-RH-MAF, 2023 WL 11891258, at *4-5 (N.D. Fla. Sept. 5, 2023); *Schramm v. Mayrack,* No. CV 22-1443 (MN), 2023 WL 6387889, at *6-7 (D. Del. Sept. 29, 2023); *Garza v. Woods,* No. CV-22-01310-PHX-JJT, 2023 WL 5608414, at *6-7 (D. Ariz. Aug. 30, 2023) *Ambriz v. Hegar,* No. A-22-CV-1067-DII, 2023 WL 4850909, at *6-7 (W.D. Tex. June 20, 2023), *report and recommendation adopted,* No. 1:22-CV-01067-DII, 2023 WL 4853403 (W.D. Tex. July 28, 2023); *Hall v. State,* 908 N.W.2d 345, 353-56 (Minn. 2018) (finding no taking when non-interest bearing property was returned without interest); *Dani v. Miller,* 374 P.3d 779, 793-94 (Okla. 2016); *Clark v. Strayhorn,* 184 S.W.3d 906, 913-14 (Tex. App. 2006) (upholding Texas statute).

2023), *report and recommendation adopted*, No. 1:22-CV-01067-DII, 2023 WL 4853403 (W.D. Tex. July 28, 2023).

As a matter of law, Plaintiff's property was not taken. It was abandoned through his own neglect. Federal courts have long refused to reward a lack of vigilance in the management of one's property. *See, e.g., United States v. Locke,* 471 U.S. 84, 107 (1985) ("Their property loss was one appellees could have avoided with minimal burden; it was their failure to file on time—not the action of Congress—that caused the property right to be extinguished."); *Hawkins v. Barney's Lessee,* 30 U.S. 457, 466 (1831) ("What right has any one to complain, when a reasonable time has been given him, if he has not been vigilant in asserting his [property] rights?" (alteration added)). Moreover, the Commonwealth provides a mechanism for Plaintiff to reclaim his property in full. It further provides for the recovery of interest earned by the property, even when the abandoned property may not have earned interest beforehand. This is all, and perhaps more, than the federal constitution requires. *See Brown v. Legal Found. of Washington,* 538 U.S. 216, 235-37 (2003) (collecting cases holding "just compensation" requires only that the property owner be returned to the position she was in before the taking); *see also Bos. Chamber of Com. v. City of Bos.,* 217 U.S. 189, 195 (1910) ("And the question is, What has the owner lost? not, What has the taker gained?"). Plaintiff's complaint fails to state a plausible Takings Clause claim.

## V.    CONCLUSION

For these reasons, Defendant's motion to dismiss (Dkt. No. 18) is GRANTED. This case may now be closed.

It is So Ordered.

  /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Thomas R. Narrigan,                              *
Individually and on behalf of all others         *
Similarly situated                               *
Plaintiff,                                       *
                                                 *
                                                 *
                                                 *          Civil No. 24-10107-MGM
                                                 *
        v.                                       *
                                                 *
Deborah B. Goldberg,                             *
In her official capacity as Treasurer and        *
Receiver General of the Commonwealth of *
Massachusetts                                    *
    Defendant,                                   *
                                                 *

ORDER OF DISMISSAL
March 25, 2025

**MASTROIANNI, U.S.D.J.**

        Pursuant to Memorandum and Order (Dkt. No. 44) issued on March 25, 2025, it is

hereby ORDERED that the above-entitled action be and hereby is dismissed.

                                By the Court,

March 25, 2025                  /s/ *Mark G. Mastroianni*
        Date                    Mark G. Mastroianni
                                 U.S. District Judge

Add. 018